## SLATER *v.* HAMACHER.*

APPELLATE PRACTICE; OBJECTION AS TO NON-JOINDER OF PARTIES; ADEQUATE REMEDY AT LAW; EQUITY; EVIDENCE; FRAUD; PRINCIPAL AND AGENT; NOTICE; REVERSIBLE ERROR.

1. A suggestion of the failure to join a necessary party to a bill in equity, made for the first time on an appeal by one of the defendants against whom the decree appealed from was rendered, will not be considered.

2. Nor will such a party be allowed to avail himself of an objection that the complainant had an adequate remedy at law, when the cause had proceeded to decree upon the findings and testimony in the court below, without such an objection having been made, and when it is made for the first time on the appeal.

3. In weighing testimony, a court of equity is not bound to believe a particular fact because the witnesses testifying to it have not been contradicted or impeached by evidence tending to show a want of reputation for veracity; but the inherent probability or improbability of such a fact is to be tested by the surrounding circumstances and by the ordinary laws that govern human conduct.

4. In a suit in equity to vacate a deed of real estate in which the grantor, an aged and dying woman, had a life estate with power to sell or incumber if necessary in her opinion for her maintenance, it appeared that the sale was not necessary for that purpose. The defendant, however, testified that she sold the property to him for $7,000, stating it was necessary for her to do so. On cross-examination he stated that although she had seen him but once before, she loaned him $6,000 of the purchase money on his unsecured note. This note was found among the grantor's effects after her death and bore the same date

---

*Pending the hearing of this case on its merits in the Court of Appeals a motion was made by the appellees to dismiss the appeal upon the ground that it was an appeal by one defendant only from a joint decree against several defendants. Thereupon the appellant moved for leave to amend his appeal by inserting the names of the other necessary defendants. The appellees' motion to dismiss was overruled and the appellants' motion was granted, subject to the making of the amendment of the appeal by citation to all parties. See Slater v. Hamacher, *ante,* p. 295. REPORTER.

as the deed. The defendant's testimony as to other circumstances was directly contradicted in several particulars. Shortly after acquiring the title, he placed a deed of trust upon the property for $7,000 to secure his note for that sum payable to his cousin for whom his father claimed to have had that sum in his hands for investment for her and to have so invested it. *Held,* affirming a decree of the court below which vacated the deed and the deed of trust and directed the return of the $6,000 note to the defendant upon payment by him of the costs of suit, (1) that the defendant's testimony was unworthy of credence; (2) that if his cousin had in fact intrusted her money to the defendant or his father for investment, she was chargeable with notice of their fraud, as they were her agents; and (3) that if there was error in that part of the decree which directed the surrender of the note for $6,000 to the defendant, it was error committed in his favor of which he could not be heard to complain.

No. 927. Submitted November 24, 1899. Decided January 16, 1900.

HEARING on an appeal by one of several defendants from a decree of the Supreme Court of the District of Columbia, in a suit in equity to vacate a conveyance of real estate and for other purposes. *Affirmed.*

The COURT in its opinion stated the case as follows:

Anthony Buchly died July 22, 1881, leaving a will and codicil making disposition of property, both real and personal, situated in the District of Columbia.

The first clause of the will is as follows:

" I, give, devise and bequeath unto my well-beloved sister, Anna Maria Buchly, for, and during, her natural life, all my real and personal estate, and property, of whatsoever kind, or character, wherever situated of, which I may die, seized and possessed, with full powers, to my said, sister to sell, transfer, or encumber, any, or all of my said estate, or property; if for her maintenance and support the necessity, in her opinion, may require it. The personal property intended to pass to my said sister, includes all my household furniture, store, stocks, horses, vehicles, monies, bonds, notes, credits and open acounts on my books, and whatsoever else I may have and possess of personal effects.

"The foregoing devise and legacy subject nevertheless, to payment of all my just debts, if any there should be, my funeral expenses, the legacy to my son, hereinafter bequeathed, and the following directions to my executors, hereinafter named, who shall see the faithful and prompt execution of my wishes, as in this will expressed."

The will contains elaborate provisions for the conversion of personal estate into money and securities, care, etc., of the real estate, and specially provides that the real estate contained in Squares 116 and 381 in the city of Washington shall be sold and conveyed by the executors within one year from the death of said Anna Maria Buchly for the purpose of fulfilling the bequests thereinafter made. The lot in controversy is in said Square 116.

A bequest is then made for investment, and the use of the income for the support, and burial, of testator's only son, William S. Buchly, who was living at the time of testator's decease, but died in January, 1893.

To take effect upon the death of Anna Maria Buchly, the life tenant, a bequest is made of $5,000 of the funds of the estate to Joseph Hamacher and others, trustees for the benefit of Federal Lodge, F. A. A. Masons; and a like one to other trustees for Columbia Lodge, I. O. O. F.

Upon the death of his son aforesaid the sum set apart for his support, etc., was bequeathed also to said Hamacher and others, trustees for the lodge of Masons aforesaid.

Certain other real estate in Squares 380 and 457 is devised to trustees for sale, the proceeds to be added to said last named fund.

In case of the failure of legatees to accept said bequests, they are to go to the Washington Orphan Asylum.

Anna Maria Buchly, William P. Bell and Isaac L. Johnson are made executors, and others are named in their places should they die or decline to act.

A codicil to this will makes no changes worthy of note

and adds, by way of explanation of testator's general purpose, the following :

"Seventh. As both in my will and this codicil I have disposed of my property, first to my sister, who has been faithful and true to me and to all my interests, and next to institutions that have honored me repeatedly and to whose principles I am strongly attached, and to worthy corporations for charity, and have left as a legacy to my son only an income for his life."

All of the executors named in the will refused to qualify, and James S. Edwards and William H. Goods were appointed administrators with the will annexed. Said Goods has since died.

The bill herein was filed on March 24, 1897, by Joseph Hamacher, as trustee aforesaid; The Washington Orphan Asylum and St. John's Mite Association. The last two being corporations and having only the remote possibility of an interest.

The defendants are: (1) Robert Y. Slater, of the District of Columbia; (2) Sarah Sullivan, who resides in Virginia; (3) Mahlon Ashford and George E. Fleming, as trustees in a deed of trust by Robert Y. Slater to secure a note of $7,000 to Sarah Sullivan; (4) William Pierce Bell, a co-trustee of complainant Hamacher, who long since left the jurisdiction, and has not been heard of for years; (5) Samuel C. Mills, surviving trustee of the charity fund bequeathed to Columbia Lodge, I. O. O. F.; (6) Thomas W. Fowler, George Z. Collison and John H. Seiffert, who are believed to be the trustees of said Columbia Lodge, succeeding said Mills and others ; (7) Harriet J. Buchly, who is the devisee and legatee and executrix of Anna Maria Buchly, the life tenant aforesaid, who died March 9, 1897.

The bill alleges that the testator died seized and possessed of the lot in Square 116, which the proof shows to have been worth in February, 1897, about $11,500.

It remained part of the estate subject to the trusts, etc.,

of the will, and was not sold as directed therein because the executors did not qualify and no action was ever had to require a sale.

The following are the material allegations of the bill which present the grounds of controversy:

"6. As the complainants are informed and believe, and therefore aver, the defendant, Robert Y. Slater, shortly before the death of the said Anna Maria Buchly, to wit, on the 25th day of February, A. D. 1897, obtained from the said Anna Maria Buchly an instrument in writing purporting to be a deed to him in fee simple of the said Lot 17, in Square No. 116, in the city of Washington, in the District of Columbia; which deed the said defendant, Slater, thereafter, to wit, on the 26th day of February, A. D. 1897, caused to be recorded among the land records of the District of Columbia; and thereafter, to wit, on the 12th day of March, 1897, by deed recorded on the said last mentioned date, the said Robert Y. Slater conveyed the said Lot 17, in Square No. 116, to the defendants, Mahlon Ashford and George E. Fleming, as trustees, to secure an alleged promissory note of the said defendant Slater, to the defendant Sarah Sullivan, described in said conveyance as Sallie Sullivan, the said note bearing date the said 12th day of March, A. D. 1897, for the sum of $7,000, and being payable three years after its date, with interest at the rate of six per centum per annum. Said Lot 17, in Square 110, is vacant, unimproved, and uninclosed, and no possession thereof has been taken by the said Slater or any other person or persons claiming under the said deed to him.

"7. As will appear by reference to the will of the said Anthony Buchly, the said Anna Maria Buchly was without power to sell or transfer any part of the estate of the testator unless such sale or transfer was necessary for her maintenance and support; and although the said will left the necessity of such sale or transfer to her own judgment, yet, as the complainants are advised and believe, and therefore

aver, the said Anna Maria Buchly was bound to exercise
her said judgment and discretion in good faith, and was
without power to dispose of any part of said estate under
the guise of necessity for her maintenance and support, if
no semblance of such necessity in fact existed or could · by
any reasonable exercise of her said judgment or discretion
in good faith be deemed or supposed to exist. The com-
plainants are informed and believe, and therefore aver, that
the attempted sale or conveyance of the said Lot 17, in said
Square No. 116, to the defendant Slater was not made for
the maintenance or support of the said Anna Maria Buchly,
and was known by both herself and the defendant Slater
not to have been made for any such purpose; that, as the
complainants are informed and believe, and therefore aver,
the said Anna Maria Buchly, besides a fee simple owner-
ship of an undivided one-half interest in Sublot C, in
Square No. 380, in the city of Washington, in the District
Columbia, was worth a large sum of money, to wit, not
less than $15,000. The said Anna Maria Buchly was, and
since the death of the said testator had been, in receipt of
an income of a large amount, viz., of about two hundred
dollars per month, from the estate of the said testator, while
her habits of life were, in the extreme, frugal and economi-
cal, her disbursements for her own · support and mainte-
nance not exceeding, it is believed, more than one-fourth of
than sum, and that at the very time of the said conveyance
to the defendant Slater she had a considerable cash bal-
ance in bank to her credit; was the owner of promissory
notes or other securities aggregating thousands of dollars,
representing her savings from her said income over and
above her disbursements. The complainants are further
informed and believe, and therefore aver, that the said con-
veyance was not made at the instance of the said Anna
Maria Buchly herself, but was executed by her at the
instance and through the importunities of the defendant
Slater, his agents or other persons acting on his behalf or

in concert with him, all of whom well knew that the said
conveyance was not made by the said Anna Maria Buchly
out of either a real or supposed necessity for her support or
maintenance; and the complainants are further informed
and believe, and therefore aver, that the price paid by or
on behalf of the said Slater to the said Anna Maria Buchly
for the said conveyance was of itself so grossly inadequate
as to furnish conclusive evidence that the said conveyance
was not and could not have been intended by either of the
parties thereto, as a sale and conveyance in good faith for
the purposes of sale authorized by said will, if said will did
in fact authorize any sale of said Lot 17.

" 8. The complainants further show to the court that the
power of sale given to the said Anna Maria Buchly was in
terms made subject to ' the following directions to my exec-
utors ' contained in the said will, and that among such direc-
tions is a positive direction to sell said testator's property in
Squares No. 116 and 381, in the city of Washington, within
one year after the death of the said Anna Maria Buchly;
that the said Lot 17 was the only property in Square No.
116 of which testator was ever owner, and therefore, upon a
proper construction of the will of the said Anthony Buchly,
the power of sale conferred upon the said Anna Maria
Buchly by the said will, as complainants are advised and
believe, and therefore aver, did not extend to the said Lot
17, in said Square No. 116 ; but, whether such power of sale
did or did not extend to said lot in case of necessity for the
maintenance and support of said Anna Maria Buchly, these
complainants aver that the conveyance of said lot to the
defendant Slater was utterly void because of the fact, above
set forth, that such sale and conveyance was not and could
not have been by either of the parties thereto understood as
being a sale or conveyance made in good faith out of
necessity for such maintenance and support.

" 9. The complainants further aver that if the defendant,
Sarah Sullivan, or Sallie Sullivan, ever did in fact advance

$7,000 to the defendant Slater on the security of the title claimed by him to the said Lot 17, she did so with both actual and constructive notice of the want of power in said Anna Maria Buchly to make said conveyance under the facts and circumstances as they existed. The complainants, however, have grave reasons to believe that no such advance was in fact made upon the security of the said lot or at all, and upon their information and belief they aver that the said promissory note to the said Sallie Sullivan and the said deed of trust purporting to secure the same are without consideration or valid legal existence."

Alleging that they have no adequate relief at law, the complainants pray: (1) That the deed of Anna Maria Buchly to Robert Y. Slater and the deed of trust of said Slater to Ashford and Fleming, trustees, be declared null and void, and held for naught; (2) and that Harriet J. Buchly, executrix and legatee of said Anna Maria Buchly, be decreed to make good from the assets in her hands, to the trustees of the Federal Lodge, F. A. A. M., and of Columbia Lodge, I. O. O. F., aforesaid, any loss and damage sustained by reason of the conveyance to said Slater.

Trustees Fowler, Seiffert, Collison and Mills answered, admitting the facts alleged in the bill; and trustees Ashford and Fleming admitted that they had been named as trustees in the trust deed of Robert Y. Slater aforesaid, and disclaimed all knowledge of the facts alleged.

Hattie J. Buchly answered the bill generally and her defenses are now of no importance.

Robert Y. Slater admitted the conveyance to him as alleged in the bill, and that he executed the trust deed on the lot so conveyed to Ashford and Fleming to secure his note to Sarah Sullivan for $7,000, due at three years and bearing 6 per cent. interest per annum. He sets out the power in the will of Anthony Buchly heretofore stated, and then answers the material charges of the bill as follows:

" I deny the charge that the conveyance of said Lot 17,

referred to in the seventh paragraph of the plaintiff's bill of complaint, was not made to me for the maintenance or support of said Anna Maria Buchly, and I deny that before or at the time, to wit, the 25th day of February, 1897, said conveyance was made to me and full payment of the consideration paid to her that I had any knowledge, information, or belief that the same was not made for her maintenance or support. At that time I had no knowledge, information, or belief as to whether said Anna Maria Buchly was the owner in her own right of any other property, real or personal. I had no knowledge, information, or belief as to the amount of her income from the life estate vested in her by the will of her brother, Anthony Buchly, and I had no knowledge, information, or belief as to the amount of her expenses either for her own maintenance or support or for paying her taxes. I have no personal knowledge as to whether said Anna Maria Buchly was, in her habits of life, frugal and economical, or as to the amount of her expenditures, nor had I any information or belief as to whether at the time of said conveyance and of the payment by me of the purchase money that she had or had not any cash in bank or was the owner of promissory notes and other securities aggregating thousands of dollars or less. All the other allegations in the seventh paragraph in said bill of complaint not hereinbefore denied I deny save and except my admissions hereinafter made. My business is largely confined to dealing with tax titles and property covered with tax deeds. Late in February last I ascertained that said Lot 17 had been sold for taxes, and that a tax deed had been issued on said sale, and that there was a large amount of taxes in arrears on said lot; and I further ascertained that the title to said lot, subject to said tax deed, was vested in said Anna Maria Buchly, and that she had the power of sale of the same. I did not know her and had never before heard of her. I called on her, supposing that she had no property of her own with which to

pay the taxes, and I found all her surroundings indicated poverty. I called her attention to said lot and to the fact that it had been sold for taxes, and that there was a large amount of taxes in arrears due on it. I asked her if she desired to sell the lot. She stated that she did. I offered her $7,000 in cash for it. She accepted my offer. I called the next morning on her, and she executed and delivered her deed to me conveying said lot to me in fee, and I gave her therefor then and there $7,000 in cash. I had no agents or other person acting for me or assisting me in any way in the negotiations or in the purchase of said lot. I bought the lot subject to the tax deed and to the arrears of taxes, and I allege that the consideration given by me for said deed was full and adequate, considering that I bought it subject to the taxes in arrears on it and subject to a tax deed, and I allege that what I did was done in good faith, in the firm belief that said Mrs. Buchly needed the money; otherwise that she would not have permitted the lot to have been sold for taxes and would not live amid the surroundings of poverty."

Sarah Sullivan answered, denying knowledge generally of the allegations of the bill, and alleging that the note of Robert Y. Slater for $7,000 secured as aforesaid had been delivered to her "in consideration in full of $7,000." She denies that when she received said note she had notice, actual or constructive, that any person other than Slater had any interest in or claim upon the said lot; and further avers that said trust deed and note "are valid and based on full and valuable consideration."

The decree of the court rendered on the pleadings aforesaid and evidence introduced in support thereof, vacated the deed and trust deed as prayed and taxed the costs of the cause against Robert Y. Slater.

It was further decreed that the defendant, Hattie J. Buchly, as executrix aforesaid, shall deliver to the clerk of the court a certain note of Robert Y. Slater for $6,000,

given to Anna Maria Buchly, the same to be canceled and surrendered to said Robert Y. Slater upon his payment of the costs.

From this decree Robert Y. Slater alone prayed an appeal, and, having given the required bond for costs, brought the same to this court for review.

A motion was made to dismiss the appeal on the ground that other defendants interested in the cause had not joined in the appeal, and there had been no summons and severance, or other equivalent proceeding, to entitle the said Robert Y. Slater to maintain the appeal alone.

The appellant moved to amend his appeal by inserting the name of the other necessary defendants, and the same was allowed and the motion to dismiss denied, on October 17, 1899 (*ante*, p. 295), subject to the perfection of said amendment by citation to all parties. These conditions have been complied with.

*Mr. O. D. Barrett* and *Mr. Charles A. Keigwin* for the appellants.

*Mr. J. J. Darlington* for the appellees.

*Mr. Charles H. Cragin* for the defendant, Hattie J. Buchly, for affirmance of the decree below.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. It is not alleged in the pleadings, but appears incidentally in the testimony, that William S. Buchly, the son of the testator for whom provision was made in the will, died before the institution of this suit leaving a son named William S. Buchly.

No suggestion was made in the court below, either before or at the hearing, that this son was a necessary party to the cause. That suggestion was made for the first time, on the argument in this court, and the contention is that the court has no jurisdiction to proceed without him, because the legal title to the lot is vested in him.

Whether there was, under the facts disclosed by the record, such a title in the said William S. Buchly as would have authorized his being made a party to the suit, upon seasonable suggestion made in the trial court, we need not stop to inquire.

Viewed in the most favorable light that is possible, his interest in the litigation and the propriety of his joinder do not entitle the appellant to the benefit of the suggestion at this stage of the case. *Weightman* v. *Critic Co.*, 4 App. D. C. 136, 148, 153, and cases cited.

2. Another point made now for the first time by the appellant, is, that the equity court had no jurisdiction because the complainants' remedy, if any, is at law.

It is by no means apparent that the complainants would have a plain, adequate and complete remedy at law through an action of ejectment; but the question need not now be considered or decided. Under the rule laid down in a recent case, it comes too late. *Tyler* v. *Moses*, 13 App. D. C. 428, 442.

3. It is quite clear from the evidence and is not seriously denied that there was in fact no necessity for the sale of this property for the support and maintenance of Anna Maria Buchly, the life tenant.

She was an old woman of simple habits and few wants, and enjoyed a fixed income from rents of property in excess of her expenses.

Besides, she had saved and invested large sums of money for one in her condition.

However, under the view that we have been compelled to take of the evidence on the controlling issue of fact, whether Robert Y. Slater actually purchased and paid for the property as alleged in his answer, it is not necessary to construe the will of Anthony Buchly in an attempt to determine the extent of the discretion committed to the life tenant to sell property of the estate, if in her opinion it should become necessary for her maintenance and support.

Nor, for like reason, is it important to determine whether, under the contentions of either party in respect of the extent of that power, the appellant was bound to inquire with diligence into the actual condition of his grantor, and would be chargeable with notice of the want of any such necessity on her part.

4. This brings us to the main question, our answer to which has been intimated above. Did Robert Y. Slater actually purchase the lot from Anna Maria Buchly and pay her the sum of $7,000 therefor as alleged by him ?

At the time of the execution of the deed Anna Maria Buchly lived at 912 Pennsylvania avenue, in the city of Washington, and seems to have lived alone. No one connected with her was present upon the two occasions when Robert Y. Slater saw her. He had never met her before his first visit on February 24, 1897. She was 75 years of age, and was suffering at the time with *la grippe*, from which she died twelve days afterwards.

Her surroundings were humble and gave no indication of the possession of much means, though after her death it was discovered that she had about $18,000 in money, some of which was in bank and the remainder in her room. She had also about $25,000 in good securities.

Robert Y. Slater was a young man, but little past 21 years of age, and was in the employ of his father, John G. Slater, who, among other things, was a dealer in tax titles.

In the course of his investigations John G. Slater discovered that the lot in controversy belonged to the estate of Anthony Buchly, and had been sold for taxes and conveyed to one Pairo. He ascertained the residence of Anna Maria Buchly, and her power under the will of Anthony Buchly, and sent his son to purchase the lot.

The facts relating to the purchase were testified to on behalf of the appellant substantially as follows:

Robert Y. Slater testified that at his father's suggestion he called to see Anna Maria Buchly at her home on

February 24, 1897, and found her alone.  He inquired if she
would sell the lot, and was told that she would take $7,000
for it, subject to the unpaid taxes.  He then asked her if
she needed the money for her support and was informed
that she did.  He agreed to pay her $7,000 and departed.
The interview was short.  On the next morning John G.
Slater delivered to him $7,000 in bills to pay for the lot,
and had a deed prepared for the signature of Miss Buchly
reciting a consideration of $10.  With this money and deed
in his pocket he called on Miss Buchly, taking with him a
notary public, one Thomas W. Soran, for the purpose of
securing her acknowledgment of execution of the deed.
She was alone.  He delivered the money to her ($7,000)
and she executed, acknowledged and delivered the deed.
He never saw her again.  The transaction was concluded
in a few minutes.

The notary testified that he went with Robert Y. Slater
at his request and for the purpose stated.  Slater exhibited
a roll of money.  He heard Miss Buchly say that the
money was necessary for her support. · He saw Slater go
to the table where Miss Buchly sat and count money while
she was signing the deed.  Slater called on her to acknowl-
edge the deed, which she did, and witness took it to another
table where he wrote the acknowledgment and affixed his
signature and seal.  He did not state what final disposition
was made of the money which Slater had counted on the
other table.  He overheard some conversation between
Slater and Miss Buchly in which she expressed her confi-
dence in Slater and her gratification that he had taken an
interest in her affairs and would take full charge of the
same.

John G. Slater testified to the discovery of the condition
of the title of the lot and his arrangement to purchase it.
He was under some financial embarrassment on account of
indebtedness incurred in connection with some newspaper,
and did not take deeds in his own name at the time.  He

made inquiries of the attorneys of a title company concerning Miss Buchly's power to sell and was told that she could do so if, in her opinion, the sale was necessary for her support. Upon his son's report of her willingness to sell for $7,000, he gave him the money and sent him to close the sale. This money belonged to his niece, Sally Sullivan, of Richmond, Virginia, and was in his hands for investment. On March 12, 1897 (which was the day of the death of Anna Maria Buchly), he caused his son to execute a note for $7,000 to Miss Sullivan and also to convey the said lot in trust to Ashford and Fleming to secure its payment. The lot has never been cleared of the tax title and liens.

It appears that among the papers of Anna Maria Buchly there had been found a note of Robert Y. Slater for $6,000, payable to her in six months with 6 per cent. interest, and dated February 25, 1897. (It was admitted that this note was unsecured.)

On cross-examination, Robert Y. Slater admitted that immediately after the delivery of the $7,000 to Miss Buchly she lent him $6,000 thereof for which he gave her the said note. The note was made at the time by filling out and signing a blank which he had in his pocket. He further testified that before intrusting him with the money she had said that she wanted him to take charge of her affairs.

We must refuse credence to this testimony. As was said in a recent case: "In weighing testimony we are not bound to believe a particular fact, testified to by one or more witnesses, simply because they may not have been directly contradicted therein, or impeached generally by evidence tending to show a want of reputation for veracity. The inherent probability or improbability of such a fact is to be tested by the unquestioned circumstances that surround the main transaction or occurrence, as well as by 'the ordinary laws that govern human conduct.' *Atlantic Works* v. *Brady*, 107 U. S. 192, 203; *Telephone Cases*, 126 U. S. 567." *Beals* v. *Finkenbiner*, 12 App. D. C. 23, 29.

In order to accept and act upon the appellant's testimony as true, we would be compelled to believe that this old and dying woman perpetrated a fraud upon the ultimate objects of her deceased brother's bounty, and told a deliberate falsehood in order to procure money for which she had no possible need or use.

But grant, for the sake of the argument, that she had a miserly love of money so strong as to overcome her integrity, how, then, are we to believe that she immediately lent $6,000 of this money so dearly earned, to a young man whom she had never met until the day before, and without any security whatever?

Again, is it reasonable to believe in the good faith and truthfulness of a man who confesses taking the money of such a person, at such a time, and under such conditions?

However, we are not left entirely to the unreasonableness of this evidence for its discredit. It is directly contradicted in several particulars, one of which is of considerable importance.

In the first place, John G. Slater is flatly contradicted by the attorneys of the title company, who deny having advised him concerning the title and power of sale of Anna Maria Buchly.

Again, Mr. Cragin, the counsel for Hattie J. Buchly, executrix and legatee of Anna Maria Buchly, and into whose possession as such the said note of Robert Y. Slater passed, was directly interested in ascertaining the facts concerning this sale. He testified that he inquired of Robert Y. Slater and was informed by him that he had paid. Miss Buchly seven bills of the denomination of $1,000 each. Slater denied having made this statement to Mr. Cragin; but the latter is positive in his recollection and we have no doubt concerning it. Now, it appears without doubt that Miss Buchly made no deposit of money in bank on or after that date, and that whilst there was considerable money in her house, there was no bill of that denomination.

The house was not disturbed by anyone, and the persons who made the search for the money were not only reputable, but also had no interest in concealing any fact relating thereto.

5. It is not necessary to the decision of the case to review the evidence relied upon to show that Miss Sally Sullivan had $7,000 in the hands of John G. Slater for investment at the time of this transaction, and that she was, so far as personal knowledge is concerned, a *bona fide* mortgagee of the lot in controversy.

Were the question necessary to be determined, we would have great difficulty in believing, from the evidence, that she had that amount of money or any considerable part of it. But if it were conceded that she had in fact intrusted that amount of money to John G. Slater for investment, it would be no bar to the recovery, for whatever interest she took by the trust deed was acquired through the agency of her uncle and cousin, and she is chargeable, therefore, with the fraud practiced by them in procuring the conveyance from Miss Buchly.

6. Appellant has no right to complain of error in that part of the decree which directs the cancelation and delivery to him of his note for $6,000 to Anna Maria Buchly. If an error, it was committed in his favor.

The only person who could have any right to complain of this order is Hattie J. Buchly, who succeeded to all the rights of Anna Maria Buchly. Instead of complaining, she joins in asking that the decree be affirmed as rendered.

It follows that the decree appealed from must be affirmed with costs; and it is so ordered.          *Affirmed.*